UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
AHMAD RASHED,

          MEMORANDUM & ORDER

          07-CV-2726 (NGG)

          Plaintiff,

-against-

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
-------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Ahmad Rashed ("Rashed" or "Plaintiff") brings this pro se action against Defendant Commissioner of Social Security Michael J. Astrue ("Commissioner" or "Defendant") seeking judicial review, under 42 U.S.C. § 405(g), of the Social Security Administration's ("SSA") final decision denying his claim for supplemental security income ("SSI") benefits. (Compl. (Docket Entry # 1) 1-3.) The Commissioner moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Comm'r Mot. (Docket Entry # 20) 3.) For the following reasons, Defendant's motion is granted.

I.    BACKGROUND

Plaintiff testified that in April 1998 he was injured carrying a case of soda down the stairs of the grocery store where he worked as a manager and attendant. (Administrative Transcript (Docket Entry # 10) ("Tr.") 178.) In June 2002, Plaintiff applied for Title XVI supplemental security income disability payments. (Id.) The SSA ruled that he was financially ineligible to receive SSI benefits because he had excessive resources. (Tr. 39.) Shortly thereafter, Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 20.)

1

A.  ALJ Hearing

In November 2005, Plaintiff appeared pro se before ALJ Michael S. London. (Tr. 172.) At the hearing, the ALJ explained that excess resources, over $3,000 for a couple, render a claimant ineligible for SSI benefits. (Tr. 176.) The ALJ then examined Plaintiff about his resources. (See, e.g., Tr. 178.)

Plaintiff testified that as a result of his injury, he stopped working and began collecting $225 a week ($900 a month) from workers' compensation in April 1998. (Tr. 183; see Tr. 31.) Plaintiff claimed that during the time he received weekly payments, his mother also lent him about $14,000. (Tr. 183.) Plaintiff, however, did not submit any evidence that he borrowed any money from his mother. (Id.) In December 1999, Plaintiff's weekly payments ceased, but he received a lump sum settlement of $63,100 from workers' compensation. (Tr. 184.) Plaintiff also collected food stamps between 1999 and 2005: from 1999-2001, $379 a month; from 2001-2004, $389 a month; and from 2004-2005, $469 a month. (Tr. 185-86.) During this time, Plaintiff collected an additional $225 in welfare payments for monthly expenses. (Tr. 189.)

Regarding his expenses, Plaintiff claimed that he paid $950 a month for rent from 1999-2004.[1] (Tr. 187.) Additionally, he repaid his mother the $14,000 that she lent him before he received the settlement. (Id.) Plaintiff testified that he gave the remainder of the settlement to his brother who placed the money into a safe deposit box in "the store" and then gave Plaintiff money from the safe to pay for his rent or bills. (Tr. 188.) Plaintiff submitted bills and invoices

---

[1] Although Plaintiff claimed to have paid $950 a month for rent, the lease agreements he submitted into evidence dated back to April 2000. (Tr. 95-105.) Moreover, the lease agreements show that from April 2000 to April 2004 Plaintiff only paid $850 a month, and from April 2004 to April 2005 he paid $950. (Id.). Additionally, Plaintiff proffered a letter from his landlord, which stated that from May 1999 to July 2004 Plaintiff paid a monthly rent of $950 and from August 2004 to August 2005 the rent had decreased to $450. (Tr. 92.) This cover letter, which was attached to the leases and allegedly written and signed by Plaintiff's landlord, misspelled the landlord's name.

2

totaling $13,284.92.[2] Plaintiff contended that he depleted all his settlement money in the beginning of 2004 and that from January 2004 to the date of the hearing he paid for rent and other living expenses with the food stamps and monetary assistance from his brother. (Tr. 188-89.) Plaintiff's brother did not testify at the hearing.

### B. The ALJ's Decision

The ALJ found that Plaintiff had not "adequately explained or documented how he disposed of the $63,100 settlement check he received in December 1999 or [had] otherwise shown that he does not [have] resources in excess of the [maximum] amount allowed for SSI eligibility." (Tr. 22.) The ALJ, therefore, found that Plaintiff was ineligible for SSI benefits. (Id.) The ALJ reasoned that Plaintiff had not submitted any documentation that he no longer has any of the settlement money and that his testimony about how he spent the settlement money was not credible. (Id.) In evaluating the evidence, the ALJ found that the documentary evidence, as well as Plaintiff's testimony, lack credibility. (See Tr. 21.) Specifically, the ALJ focused on the leases, the $14,000 loan from Plaintiff's mother, and his claim that the entire balance of his settlement was held in his brother's safe. (See id.)

The ALJ noted that the lease forms, dated from April 2000 to April 2004, were "copyrighted by an internet legal company in 2004 and issued in July 2004, thus indicating or at least suggesting that all the lease forms . . . were recently completed" and that the cover letter attached to the leases that Plaintiff claimed were written and signed by the landlord included a misspelling of his name. (Tr. 21.) Moreover, the leases stated that Plaintiff's rent from April

---

[2] Plaintiff submitted several copies of bills and invoices into evidence to document his expenses and show that he had disposed of his settlement money, including: cellular phone bills from 2004 and 2005 totaling $432.24 and $591.14, respectively, (Tr. 89-90); a traffic violation ticket for $220 from June 2004, (Tr. 91); an automobile purchase agreement for $8,237.01, (Tr. 93); electric bills from June 2003 to August 2005 worth a total of $2,186.01, (Tr. 107); a $408.52 invoice for bath towels, blankets and an ironing board, (Tr. 115); and medical bills totaling $1,210, (Tr. 116-17.)

3

2000 to April 2004 was only $850 a month, even though Plaintiff testified that his rent was $950 a month at that time. (Tr. 21; see Tr. 95-105; see Tr. 187.)

The ALJ also found Plaintiff's testimony regarding the loan from his mother and the balance held by his brother to be incredible. (Tr. 21.) He presented no documentation of the loan or corroborating testimony by his mother to show that he had in fact received and repaid the loan. Plaintiff initially claimed that he needed to borrow that sum of money from his mother in order to pay for rent and living expenses from April 1998 through December 1999. (Tr. 182-83.) The ALJ noted, however, that at that time, Plaintiff was also receiving $900 a month from workers' compensation; he was "not persuaded" that Plaintiff needed to borrow money from his mother to pay for his incurred expenses before receiving his workers' compensation settlement in December 1999. (Tr. 21; see Tr. 31.) Lastly, the ALJ found that Plaintiff's claim that his brother held the remainder of his settlement in a safe was "suspicious," "highly irregular," and incredible. (Tr. 21.)

In May 2007, the Appeals Council denied Plaintiff's request for review. (Tr. 3.) The ALJ's decision became the final decision of the Commissioner of Social Security. (Id.) Plaintiff timely filed this action in July 2007. (Compl. 1.) Defendant answered and filed a motion for judgment on the pleadings. Plaintiff did not file an opposition to the Commissioner's motion.

II. DISCUSSION

A. Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review under a Rule 12(c) motion is the same standard applied under a Rule 12(b)(6) motion. Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). To survive a Rule

4

12(b)(6) motion, the complaint must contain "sufficient factual matter. . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008).

In addition to considering the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). It may also consider matters of judicial notice. Granger v. Harris, No. 05-CV-3607 (SJF), 2007 WL 1213416, at *3 (E.D.N.Y. Apr. 17, 2007). The court "may take judicial notice of public records, such as documents filed in another court, to establish the existence of the documents and the fact of such litigation, but not for the truth of the matters asserted therein." Id. at *1; see Global Network Commc'n, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006).

If a defendant's motion for judgment on the pleadings is unopposed, the court "could grant defendant's motion on default pursuant to Local Civil Rule 7.1." Cortez v. Apfel, No. 96-CV-7214 (AGS), 1998 WL 601005, at *1 (S.D.N.Y. Sept. 10, 1998). However, the court will award greater leniency for a pro se litigant and review the administrative record, the ALJ's decision and the Commissioner's motion papers in making its determination. Id.; Diaz v. Charter, No. 94-CV-5149 (FB), 1996 WL 612492, at *1 (E.D.N.Y. Oct. 16, 1996). This court's review of the SSA's final decision is limited to determining whether the ALJ's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is "more

than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). It is "such relevant evidence as a reasonable mind might accept as adequate support to a conclusion." Id. (internal quotation marks omitted).

**B.     Applicable Law**

Under 42 U.S.C. § 1382(a)(3)(A), a claimant is financially eligible for SSI benefits if his or her resources, together with the resources of his or her spouse, do not exceed $3,000. Resources are defined as "cash or other liquid assets or any real or personal property that an individual owns" and "could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). A claimant is required to provide evidence to prove that he or she meets the financial requirements. 20 C.F.R. § 416.200. Even if a claimant's resources exceed the $3,000 limitation at the time of filing, the SSA may nonetheless find the claimant to be eligible if "he or she establishes by credible evidence that those resources have been "spent down," that is, that any excess above the resource limit has been eliminated" by the time of the SSA's final determination. Nicolae v. Barnhart, No. 04-CV-2068 (FB), 2005 WL 715929, at *1 (E.D.N.Y. Mar. 28, 2005); see Hudson v. Bowen, 849 F.2d 433, 434 (9th Cir. 1988).

The ALJ is responsible for weighing any conflicting evidence in the record and evaluating the credibility of any witnesses. See Clark v. Comm'r of Social Security, 143 F.3d 115, 118 (2d Cir. 1998). However, in calculating whether a claimant has spent down excess resources, the ALJ is "free to disregard self-serving statements that cannot be verified." Nicolae, 2005 WL 715929, at *3 (citing Hudson, 849 F.2d at 434). The ALJ's credibility assessment is given great weight. Id.

6

## C. Application

The ALJ's eligibility determination is supported by substantial evidence on the record as a whole. The ALJ found that Plaintiff's resources exceeded $3,000 because he received monthly payments of $900 from workers' compensation after his injury in 1998 and a lump sum workers' compensation settlement of $63,100 in 1999. (Tr. 21-22.) The ALJ did not rely on the documentary evidence that Plaintiff presented or his testimony because he found internal inconsistencies in the leases and because he found Plaintiff to be incredible. (Tr. 22.) This court gives deference to the ALJ's credibility finding. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999). Plaintiff did not meet his burden to counter the ALJ's findings and prove that he had disposed of the settlement before the SSA reached its final decision.

The lease agreements dating from April 2000 to April 2004 and the invoices for various other household expenses presented by Plaintiff as documentary evidence were insufficient to meet his burden because the leases were not reliable documents and the other expenses would not have spent down his excess resources. (See Tr. 89-114.) Plaintiff did not provide the SSA with any bank statements or documentation of his $14,000 loan borrowed from his mother. (See id.) Neither Plaintiff's mother nor brother testified to corroborate that he repaid his mother the $14,000 loan and that his brother held the balance of the settlement. (See Tr.171-191.)

Therefore, the inconsistency between Plaintiff's testimony and the documentary evidence provided, in addition to the suspicious nature of the leases and the absence of witnesses to substantiate his claims, show that the ALJ was warranted in finding Plaintiff's assertions concerning the disposal of the settlement check as not credible. Thus, substantial evidence supports the ALJ's eligibility determination.

## IV. CONCLUSION

For the foregoing reasons, the court grants the Commissioner's motion and the complaint is dismissed.

SO ORDERED.

                                                                          s/Nicholas G. Garaufis

Dated: Brooklyn, New York                   NICHOLAS G. GARAUFIS
       July 30, 2010                            United States District Judge